**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| FULSOM CONSTRUCTION COMPANY, )<br>INC., an Oklahoma corporation,  )<br>                                                            )<br>              Plaintiff,                           )<br>vs.                                                        )      NO.  CIV-01-1754-HE<br>                                                            )<br>UNITED STATES FIDELITY AND       )<br>GUARANTY COMPANY, a foreign    )<br>corporation, ET AL.,                          )<br>                                                            )<br>              Defendants.                       ) | |

## ORDER

Plaintiff Fulsom Construction Company, Inc. ("Fulsom Construction") filed this action against defendants United States Fidelity and the Guaranty Company and St. Paul Insurance Company (collectively referred to as "USF&G"), requesting an accounting and seeking damages, including lost profits, for the defendants' alleged breach of contract. The defendants have filed a motion for summary judgment on the plaintiff's claims and their counterclaim and third-party claim. The court previously announced its decision that the defendants' motion would be granted as to the plaintiff's claim for lost profits and otherwise denied.[1] This order explains the rationale for the court's rulings.

Fulsom Construction contracted with the Oklahoma Department of Transportation ("ODOT") in 1994, to perform resurfacing, signing, striping and lighting work on a state

---

[1] *Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the plaintiff, the nonmoving party. Davidson v. America Online, Inc., 337 F.3d 1179, 1182 (10th Cir 2003).*

highway. The construction company obtained payment and performance bonds from USF&G pursuant to a Master Surety Agreement, in which Joe and Jean Fulsom ("indemnitors") agreed to indemnify USF&G for any liability or losses it incurred due to Fulsom Constructions' failure to perform or comply with its contract with ODOT. After ODOT declared Fulsom Construction in default in August 1995, and called upon the insurer to take over and complete the project, USF&G hired Empire Construction Company to act as general contractor. On December 15, 1995, the indemnitors entered into a Repayment Agreement with USF&G setting forth the repayment terms for any losses USF&G incurred. They also executed promissory notes payable to, and mortgages in favor of, USF&G and granted the insurer an interest in certain assets. In 1998, ODOT sued Fulsom Construction seeking liquidated damages based on its breach of contract and Fulsom Construction counterclaimed for wrongful termination. The jury awarded ODOT $218,000 and the construction company $1,140,600. Fulsom then filed this action. Summary judgment was entered in USF&G's favor and that decision was reversed on appeal. USF&G then moved once again for summary judgment.

    USF&G contends that Fulsom Construction and its principals are obligated to indemnify it for all of its losses, that the plaintiff's claims are barred by the doctrine of waiver and the applicable limitations periods, and that the construction company's claimed lost profits are too speculative to be recovered. The defendants argue they are entitled to be reimbursed for any expense incurred in good faith. They suggest the Tenth Circuit's treatment of this issue in connection with the previous appeal was dicta and does not preclude

them from reurging their position here.

While it is true that the circuit's discussion of this issue was somewhat equivocal,[2] the court concludes the suggestion of the court of appeals ("The Repayment Agreement supplements the Master Surety Agreement and provides some guidance as to the appropriate standard.") is, in any event, fully consistent with the result indicated by Oklahoma law. While the Master Surety Agreement, standing alone, might well have been consistent with the position the defendants urge, the later executed Repayment Agreement specifically references the reasonableness of expenditures and notes that it (the Repayment Agreement) shall serve "as an agreed method for Indemnitors to discharge their indemnity, statutory and common law obligations to Surety." This later supplemental agreement appears to modify the standards in the Master Surety Agreement and is, at the very least, sufficient to create an ambiguity in this aspect of the overall contractual agreement. See 15 Okla. Stat. §§ 158, 165, 170.

The court also concludes that fact questions preclude summary judgment on the

---

[2]*The court of appeals declined to uphold summary judgment in the defendants' favor on the basis that material, triable issues of fact existed as to "the reasonableness of USF&G's expenditures," a formulation suggesting that it viewed the applicable standard as whether the expenditures were "reasonable." However, the court acknowledged the dispute as to the applicable substantive standard to be applied and explicitly stated that it did not "reach the question of what standard Oklahoma would apply." Fulsom Const. Co., Inc., v. United States Fidelity and Guaranty Co., Nos. 03-6353, 04-6087, 2005 WL 2542860 at \*6 (10th Cir. Oct. 12, 2005).*

defendants' waiver defense and their statute of limitations defense.[3]  A jury question therefore exists as to both the plaintiff's claim for actual damages and the defendants' counterclaim and third party claim.

The court does, however, agree with the defendants that the plaintiff's claim for lost profits is too uncertain to be submitted to a jury.  The plaintiff's evidence as to this loss – premised on the asserted limiting effect on the plaintiff's bonding capacity of USF&G's failure to release its liens on Mr. and Mrs. Fulsom's property – is insufficient to create a triable issue of fact.

In its response to the defendants' motion for summary judgment, the plaintiff did not dispute the defendants' factual assertions that: (1) from 2001 through 2006, Fulsom Construction obtained numerous contract surety bonds from Mid-Continent Casualty Company ("Mid-Continent") and, in order to obtain those bonds, provided financial information pertaining to the company and Joe and Jean Fulsom, individually; (2) Fulsom and its agent, Bill Johnson, told Mid-Continent that it had paid all amounts owed to USF&G; (3) financial statements signed by Joe Fulsom and submitted to Mid-Continent show that the property is not encumbered; (4) Mid-Continent never rejected any effort by Fulsom to increase its bonding credit and only rejected one request for a bond, which had nothing to do with USF&G's mortgages.  Defendant's motion, pp. 9-10; plaintiff's response, p. 3.

---

[3]*The defendants' argument that the statute of limitations bars the plaintiff's request for damages resulting from the defendants' alleged refusal to account and release the mortgages does not have to be addressed. The court has concluded that those damages – claimed lost profits – are too speculative to be recovered.*

However, while admitting that Mid-Continent never turned down Fulsom Construction's bond requests, the plaintiff asserts, citing the testimony of William Johnson, its bonding agent, that it limited its requests because of its capital situation. William Johnson depo. p.12. The plaintiff claims a construction company's ability to obtain bonds depends on its cash liquidity and, because all the Fulsoms' property was mortgaged to USF&G, they could not borrow money to loan to Fulsom Construction. If USF&G had released its liens on the Fulsoms' property, the plaintiff contends the Fulsoms could have borrowed in excess of $4,000,000 and then loaned Fulsom Construction "whatever amount was needed for Fulsom to have obtained bonds for approximately $8,000,000.00 a year in projects rather than the $2,000,000.00 a year in projects Fulsom has been limited to since 1998." Joe A. Fulsom affidavit, p. 5.

For the plaintiff to establish that it sustained a loss of profits caused by the defendants' conduct, the jury essentially would have to find that (1) the Fulsoms would have been able to borrow millions of dollars, (2) the Fulsoms would have borrowed that sum of money and then loaned it to Fulsom Construction or otherwise made a capital contribution to the company, (3) with the additional funds Fulsom Construction would have obtained three or four times the bond amounts it actually obtained, (4) Fulsom Construction would have bid on and been awarded 6 to 8 ODOT safety projects a year, notwithstanding the past problems with ODOT as reflected by the 1995 default and (5) Fulsom Construction could have successfully performed and profited from those contracts. The record before the court does not support this string of assumptions. There are too many evidentiary gaps for the factfinder

to "have before it 'such facts and circumstances to enable it to make an estimate of damage based upon judgment, not guesswork.'" Malloy v. Monahan, 73 F.3d 1012, 1016 (10th Cir. 1996) (quoting United States v. Griffith, Gornall & Carman, Inc., 210 F.2d 11, 13 (10th Cir. 1954)), cited by the plaintiff.[4]

Joe Fulsom attests that, because of the liens, he and his wife were "unable to borrow sufficient monies from 1995 to the present time to enable Fulsom to bid and perform all the jobs it was capable of performing." Joe A. Fulsom affidavit, p. 4. Yet the plaintiff has not submitted any facts, as opposed to conclusory statements, demonstrating the number of jobs Fulsom Construction could have performed each year or how many it had, in the past,[5] performed annually.[6] Statements such as "[o]n a very conservative basis, if Fulsom's cash position would have allowed Fulsom to bid on and perform additional jobs, Fulsom could have and would have bid and obtained, at a conservative minimum, an additional

---

[4]*The court also questions whether Fulsom Construction, rather than Mr. and Mrs. Fulsom, has standing to assert a claim based on USF&G's failure to release the mortgages on property the corporation did not own.*

[5]*Fulsom testified that because of the liens, Fulsom Construction was limited to bidding on jobs totaling, in the aggregate, no more than $2,000,000.00, and had bid on and performed an average of 2 projects a year.*

[6]*Fulsom states in his affidavit that the construction company has a 40 years history of doing highway construction jobs in Oklahoma, Kansas and Missouri and has successfully completed over 180 highway construction contracts. Yet he does not specify the size of those contracts, the number of contracts completed each year, how many were "safety projects," whether the company's success rate on bidding on jobs in other states was the same as its 70% award rate on ODOT safety project contracts, etc. His conclusory assertion that Fulsom Construction was prevented from obtaining "sufficient bonding to bid on all the jobs Fulsom was capable of performing," Joe A. Fulsom affidavit, p. 3, does not show the size or number of jobs the company could complete annually.*

$1,000,000.00 per year in ODOT projects," *id.* at p. 5, are inadequate.[7]

A similar conclusion was reached by the Tenth Circuit in Griffith, Gornall & Carman. In that case the court concluded the plaintiff construction company's evidence of its lost profits, based exclusively on the testimony of the company president, was too speculative to sustain the judgment for that claim.  In support of its decision the court noted that:

> The books were never produced.  There was no evidence of any particular jobs which it might have bid upon, or that it would have been the low bidder if it had so bid; or that the jobs would have been profitable contracts if it had been the successful bidder. No evidence was introduced to show that the plaintiff had been denied a bond or had inquired of any surety company or others if a bond would be furnished if it were a successful bidder at a contract letting or for other contracts which might have been obtained.

Griffith, Gornall & Carman, 210 F.2d at 14.

In addition to failing to submit sufficient evidence establishing a loss and its cause, the plaintiff's proof pertaining to the amount of its alleged loss is too insubstantial to permit its lost profits claim to be submitted to a jury.  While the plaintiff is correct that some uncertainty as to the amount of lost profits does not preclude their recovery, Griffith, Gornall & Carman, 210 F.2d at 13; *see* Florafax Int'l, Inc. v. GTE Market Resources, Inc., 933 P.2d

---

[7]*Although Joe Fulsom does not definitely state in his affidavit that the construction company has been awarded ODOT projects since its default in August 1995, it appears the plaintiff has bid on and performed an average of 2 ODOT projects a year.  See Joe A. Fulsom affidavit, p. 2 ¶¶7,8.  The record does not, however, reflect the size of any ODOT projects the plaintiff completed, the size of the 8-10 safety projects Joe Fulsom states ODOT awards annually, or whether, despite its default, ODOT would have awarded Fulsom Construction 4-8 additional contracts even if it had been the low bidder. The plaintiff simply has not submitted sufficient evidence that would permit a reasonable inference that it could have obtained an additional $1,000,000.00 per year in ODOT contracts.*

282, 296 (Okla. 1997) (discussing lost profits resulting from a breach of contract), the loss must be established with "sufficient certainty that reasonable minds might believe from a preponderance of the evidence that such damages were actually suffered." *Id.*; *see* Griffith, Gornall & Carman, 210 F.2d at 13 (lost profits "must be established, not by conjectures or unwarranted estimates of witnesses, but by facts from which their existence is logically and legally inferable").

Although the standard is not high, the plaintiff's proffered evidence does not demonstrate the existence of disputed material facts which, if resolved favorably to the plaintiff, would establish a nonspeculative basis for its claimed lost profits. Joe Fulsom attests that [b]ased upon Fulsom's history of profits it has made on jobs and based upon my 40 years experience in the business, Fulsom would have made an approximate 20% profit on the additional $1,000,000.00 in contracts." Joe A. Fulsom affidavit, p. 5.[8] Yet the plaintiff submits no documentation to support his assertions. Nothing in the plaintiff's summary judgment submissions identifies the plaintiff's past contracts (other than the ODOT project underlying this litigation) that were successfully completed or demonstrates company profits. *See e.g.* Florafax, 933 P.2d at 290 ("parties presented conflicting economic projections through expert witnesses (Florafax through an economist, GTE through a Certified Public

---

[8]*In his initial affidavit which the court struck, in addition to relying on his years of experience in the business to support his profit estimation, Joe A. Fulsom relied on "Fulsom's financial statements and tax return from 1992 to present." Doc. #138, Exhibit 2, p. 4. The references to business records were not included in the revised affidavit and no documentary evidence was submitted to support the projected loss.*

Accountant")). The plaintiff's proof in this case more closely approximates that found to be too speculative in <u>Griffith, Gornall & Carman</u>, than the projections of lost future profits held to be sufficient in <u>Malloy</u>.[9]

Accordingly, as the plaintiff has failed to submit sufficient evidence to create a jury question as to the fact, causation and amount of lost profits, the defendants' motion for summary judgment [Doc.# 134] is **GRANTED** as to the plaintiff's lost profits claim and otherwise **DENIED**.[10]  Judgment on that claim will be entered when the case is concluded as to all claims. Fed.R.Civ.P. 54(b).[11]

**IT IS SO ORDERED**.

Dated this 31st day of October, 2006.

---

[9]*In support of his lost profits claim, the plaintiff in <u>Malloy</u>, who renovated and sold distressed residential properties, offered specific evidence of his loss, including the "purchase price, rehabilitation cost, commission cost, and likely sale price for each of two houses" he owned at the time of the incident. <u>Malloy</u>, 73 F.3 at 1015. Although the plaintiff offered similar calculations for properties he had not yet acquired, the court found his projections, which included testimony that the plaintiff "had investigated other houses in the area and had found, for example, a distressed residential property that he could have purchased for $14,000 in a neighborhood where another house had recently sold for $59,000," were not "unduly speculative." Id. at 1017. No similar specifics were offered by the plaintiff in this case to support its claimed loss.*

[10]*The plaintiff's shifting positions, or characterizations of its position, as to the claimed effect of the unreleased mortgages is troubling in various respects. However, the court concludes the plaintiff's conduct in this regard is not so egregious as to warrant the imposition of summary judgment on the lost profits claim as a sanction, Therefore the defendant's motion to strike that claim [Doc. #148]is **DENIED**.*

[11]As the plaintiff did not request an accounting in the Final Pretrial Report the court presumes the financial information sought was provided during discovery and the plaintiff no longer seeks that equitable relief.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

10